UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

LOUIS TASIOPOULOS,              )
        Plaintiff              )
                              )
        v.                    )    C.A. No. 14-11486-MLW
                              )
RBS CITIZENS, NA,              )
        Defendant.            )

MEMORANDUM AND ORDER

WOLF, D.J.                                February 10, 2016

        In November, 2011, Defendant RBS Citizens, N.A. ("Citizens")
foreclosed on a residence owned by Plaintiff Louis Tasiopoulos.
He and his family did not vacate the property, and Citizens brought
a summary process eviction action against them in Brockton Housing
Court for the Commonwealth of Massachusetts.  In August, 2013, the
Housing Court entered judgment for possession in favor of Citizens.

        In March, 2014, Citizens sought to enforce its judgment for
possession.  On March 19, 2014, Tasiopoulos brought this action in
Plymouth Superior Court for the Commonwealth of Massachusetts,
alleging multiple defects in the foreclosure process.  Citizens
removed to federal court on March 28, 2014, and filed the pending
Motion to Dismiss for Failure to State a Claim.  For the reasons
explained below, the court is allowing Citizens' Motion to Dismiss.

I. BACKGROUND

        Tasiopoulos and his wife, Michele Tasiopoulos, owned property
in Norwell, Massachusetts.  In 2002, they obtained two mortgages

secured against the property from Charter One Bank, N.A.[1]  Charter One subsequently merged into Citizens, and Citizens became the holder of both notes and mortgages.

In 2008, Tasiopoulos began to pursue a loan modification under the Housing Affordable Modification Program ("HAMP").  He alleges that Citizens, the mortgage holder at the time, "failed or otherwise refused to respond to [his] request for modification." Tasiopoulos also claims to have submitted multiple Qualified Written Requests ("QWRs") to Citizens, seeking information about the current owner of the mortgage under the Real Estate Settlement Procedure Act, 12 U.S.C. §2601 et seq. ("RESPA").  He alleges that Citizens failed to provide "a sufficient response to [the] QWR[s]."

Citizens foreclosed on both mortgages, resulting in a foreclosure sale on November 17, 2011, where Citizens purchased the property.  After the foreclosure sale, Tasiopoulos and his family remained on the property.  On May 3, 2012, Citizens filed a summary process eviction action against Tasiopoulos in Brockton Housing Court.[2]  Tasiopoulos answered with several affirmative

---

[1] Tasiopoulos asserts that of the two parcels of land in Norwell he owned, only one was subject to the mortgages.  However, the mortgage contract describes both parcels.  See Mem. in Supp. of Mot. to Dismiss, Docket No. 14, Ex. A.  Although Tasiopoulos did not attach a copy of the mortgage contract, the court considers it because it is "sufficiently referred to in the complaint." Watterson v. Page, 987 F.2d. 1, 3 (1st Cir. 1993).

[2] Citizens provided the Housing Court record in conjunction with its Motion to Dismiss.  Mem. in Supp. of Mot. to Dismiss, Docket

defenses, including failure to properly foreclose under Massachusetts law and failure to provide assistance under the Federal Home Affordability Act.  He also included counterclaims for retaliation, discrimination, breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, unfair business practices, and superior right to possession.

The Housing Court found in favor of Citizens and issued a judgment for possession on August 8, 2013.  Def.'s Mem. in Supp. of Mot. to Dismiss, Docket No. 14, Ex. H.  The Court specifically found that Citizens conducted the foreclosure sale and recorded the foreclosure deed according to the relevant state statutes. Id. at 4-5.  The court also found that Citizens "clearly and substantively complied" with various state law tests for a proper foreclosure.  Id. at 5.  As to Tasiopoulos' counterclaims, the Court found no facts to support his claim of superior right to possession.  Id.  It dismissed the remaining counterclaims because there was no landlord-tenant relationship between Citizens and Tasiopoulos, as required at the time for those counterclaims to be raised in Housing Court.  Id. at 6; M.G.L. c. 239, §8A.

On or about March 4, 2014, Citizens notified Tasiopoulos that it was evicting his family.  On March 19, 2014, Tasiopoulos filed

---

No. 14, Exs. F-I.  The court considers these proceedings because they are a matter of public record. See Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008).

this action in the Plymouth Superior Court, alleging four counts against Citizens: breach of contract (Count I), violation of RESPA (Count II), violation of HAMP (Count III), and breach of the implied covenant of good faith and fair dealing (Count IV). Tasiopoulos seeks vacation of the foreclosure sale as well as monetary relief.[3] Citizens filed a motion to dismiss, arguing that Tasiopoulos' claims are barred by res judicata or, to the extent they are not barred, that he has failed to state any legally cognizable claim.

II.  LEGAL STANDARDS

A. Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations," but does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A court may disregard "bald assertions, unsupportable conclusions, and opprobrious epithets."

---

[3] Tasiopoulos also moved for a preliminary injunction prohibiting any further eviction or levy efforts against him. See Docket No. 4. After an emergency hearing, District Court Judge Zobel denied this motion on the ground that Tasiopoulos "failed to show a likelihood of success as to any of his claims as they have been decided in the Housing Court or could have been raised there." Docket No. 12.

In re Citigroup, Inc., 535 F.3d 45, 52 (1st Cir. 2008); Penalbert-Roia v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011).

A motion to dismiss should be denied if a plaintiff has shown "a plausible entitlement to relief." Twombly, 550 U.S. at 559. That is, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

In considering a motion to dismiss under Rule 12(b)(6), the court must "take all factual allegations as true and . . . draw all reasonable inferences in favor of the plaintiff." Rodriguez-Ortiz v. Marao Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007); Maldonado v. Fontanes, 568 F.3d 263, 266 (1st Cir. 2009). The court "neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." Day v. Fallon Cmty. Health Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996) (Gorton, J.).

"Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). However, there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiff['s] claim; or for documents sufficiently referred to in the complaint." Watterson, 987 F.2d at 3-4. When "a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998). When such documents contradict an allegation in the complaint, the document trumps the allegation. See Clorox Co. P.R. v. Proctor & Gamble Consumer Co., 228 F.3d 24, 32 (1st Cir. 2000) (citing Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998)).

B. Res Judicata

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" Taylor v. Sturgell, 553 U.S. 880, 892 (2008); Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843

(2005) ("The term 'res judicata' includes both claim preclusion
and issue preclusion."). Res judicata is an affirmative defense
and "may be adjudicated on a motion to dismiss for failure to state
a claim." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16
(1st Cir. 2003).

Federal courts are required "to give preclusive effect to
state-court judgments whenever the courts of the State from which
the judgments emerged would do so." Allen v. McCurry, 449 U.S.
90, 96 (1980). "This is true regardless whether the state-court
decision involves federal or state law." Penobscot Nation v.
Georgia-Pac. Corp., 254 F.3d 317, 323 (1st Cir. 2001). In
Massachusetts:

> "Claim preclusion makes a valid, final judgment
> conclusive on the parties and their privies, and
> prevents relitigation of all matters that were or could
> have been adjudicated in the action." O'Neill v. City
> Manager of Cambridge, 428 Mass. 257, 259, 700 N.E.2d
> 530 (1998) quoting Blanchette v. School Comm. of
> Westwood, 427 Mass. 176, 179 n. 3, 692 N.E.2d 21 (1998)
> . . . . The invocation of claim preclusion requires
> three elements: "(1) the identity or privity of the
> parties to the present and prior actions, (2) identity
> of the cause of action, and (3) prior final judgment on
> the merits." DaLuz v. Department of Correction, 434
> Mass. 40, 45, 746 N.E.2d 501 (2001), quoting Franklin
> v. North Weymouth Coop. Bank, 283 Mass. 275, 280, 186
> N.E. 641 (1933).
>
> Similarly, issue preclusion "prevents relitigation of
> an issue determined in an earlier action where the same
> issue arises in a later action, based on a different
> claim, between the same parties or their privies."
> Heacock v. Heacock, [402 Mass. 21, 24 (1988)]. Before
> precluding a party from relitigating an issue, "a court
> must determine that (1) there was a final judgment on

7

the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134, 697 N.E.2d 983 (1998), and cases cited. "Additionally, the issue decided in the prior adjudication must have been essential to the earlier judgment." Id. at 134-135, 697 N.E.2d 983, and cases cited.

Kobrin, 444 Mass. at 843-44.

Claim preclusion bars the litigation of any claims that could have been raised in a prior case, even if they were not actually litigated. See Isaac v. Schwartz, 706 F.2d 15, 17 (1st Cir. 1983); Coughlin v. Town of Arlington, No. CA 10-10203-MLW, 2011 WL 6370932, at *6 (D. Mass. Dec. 19, 2011). Issue preclusion, however, "can be used only to prevent relitigation of issues actually litigated in the prior action . . . and thus [the court must] look to the record to see what was actually litigated." TLT Const. Corp. v. A. Anthony Tappe & Associates, Inc., 48 Mass. App. Ct. 1, 4-5 (1999).

III. ANALYSIS

A. Precluded Claims

Citizens argues that the judgment of the Housing Court in the summary process action precludes some or all of Tasiopoulos' claims under principles of res judicata. It does not specify whether it relies on claim preclusion or issue preclusion. However, its arguments and the cases it cites in support of them are most consistent with a theory of claim preclusion. Because all of

8

Tasiopoulos' claims are subject to dismissal, the court finds it unnecessary to consider whether issue preclusion would also apply in this case.   See Cavarette v. Greyhound Real Estate Fin. Co., No. CIV. A. 93-11003-MLW, 1995 WL 791943, at *9 n.7 (D. Mass. Dec. 21, 1995) (declining to consider issue preclusion where claim preclusion is most applicable).

Citizens has established the first and third elements of claim preclusion.   The state court record shows that Tasiopoulos and Citizens were both parties to the summary process action and that the Housing Court judge rendered a final decision on the merits in that action.   See Harker v. City of Holyoke, 390 Mass. 555, 557 (1983) (giving preclusive effect to Housing Court decision).

The second element, identity of cause of action, is also satisfied.   In Massachusetts, two causes of action are identical for claim preclusion purposes if they are "derived from the same transaction or series of connected transactions."   TLT Const. Corp., 48 Mass. App. Ct. at 8 (internal quotations omitted).   This is true even if the two causes of action are premised on different legal theories.   "The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong."   Mackintosh v. Chambers, 285 Mass. 594, 596 (1934).

In the summary process action, Tasiopoulos raised counterclaims challenging the foreclosure proceedings against his

9

property.    Those  same  foreclosure  proceedings  give  rise  to  his
current  claims.    Although  Tasiopoulos  now  asserts  breach  of
contract  and  statutory  violations  rather  than  superior  right  to
possession,  "the  causes  of  action  in  both  are  essentially  the
same."    TLT  Const.  Corp.,  48  Mass.  App.  Ct.  at  8  (judgment  on
contract  claim  precluded  subsequent  tort  claim); Coughlin,  2011  WL
6370932  at  *6  (judgment  on  tort  claims  precluded  subsequent
constitutional  claim).    Therefore,  his  current  claims  and  his  prior
summary  process  counterclaims  are  identical  for  claim  preclusion
purposes.

However,  claim  preclusion  will  only  bar  Tasiopoulos'  claims
if  they  "were  or  could  have  been  adjudicated"  in  the  Housing  Court
summary  process  action.    Kobrin,  444  Mass.  at  843;  Coughlin,  2011
WL  6370932  at  *6.    In  August,  2011,  the  Massachusetts  Supreme
Judicial  Court  held  that  the  Housing  Court  has  jurisdiction  to
consider,  as  an  affirmative  defense  to  summary  process,  that  the
plaintiff's  title  is  invalid  because  it  was  not  acquired  in  strict
compliance  with  the  power  of  sale  provided  in  the  mortgage  and  the
state  foreclosure  statute.    See  Bank  of  New  York  v.  Bailey,  460
Mass.  327,  333-35  (2011).    In  December,  2013,  the  Supreme  Judicial
Court  expanded  this  rule  to  allow  a  defendant  in  a  post-foreclosure
summary  process  eviction  action  in  Housing  Court  to  raise  a  wide
range  of  defenses  or  counterclaims  challenging  the  plaintiff's
title.    See  Bank  of  America,  N.A.  v.  Rosa,  466  Mass.  613,  625-26

10

(2013) (allowing defenses and counterclaims based on equitable claims, consumer protection statute, and anti-discrimination statute).

Citizens' summary process action was brought in May, 2012, after the decision in Bailey, and decided in August, 2013, prior to the decision in Rosa. The jurisdiction of the Housing Court at that time was governed by Bailey's "strict compliance" rule. See Rosa, 466 Mass. at 614. Therefore, his current claims are barred only to the extent that they allege Citizens' failure to strictly comply with the power of sale in the mortgage or with the state foreclosure statute.

In Count I, Tasiopoulos asserts that Citizens breached the mortgage contract by failing to provide adequate notice prior to foreclosure. This is an allegation that Citizens failed to proceed "'strictly according to the power of sale provided in the mortgage'" and could have been raised in Housing Court. Bailey, 460 Mass. at 333 (quoting Wayne Inv. Corp. v. Abbott, 350 Mass. 775, 775 (1966)). Therefore, this claim is precluded by the final judgment in the summary process action.[4]

---

[4] The fact that Tasiopoulos seeks damages as well as equitable relief does not change this conclusion. A Housing Court has the power to award damages on any claim properly before it. M.G.L. ch. 185C, §3 ("In all matters within their jurisdiction, the divisions of the housing court department shall have all the powers of the superior court . . . .").

Counts II and III allege that Citizens violated REPSA and HAMP, respectively. As discussed earlier, at the time of the summary process action, Tasiopoulos could have argued that Citizens title "[was] invalid because the foreclosure was not conducted strictly according to the [state foreclosure] statute." Bailey, 460 Mass. at 332. However, Bailey did not address whether a summary process defendant could challenge a plaintiff's title for failure to strictly comply with a federal statute. The court need not decide that question now. Even if Tasiopoulos' RESPA and HAMP claims are not precluded, they are unmeritorious for other reasons, as explained below.

Count IV alleges a breach of the implied covenant of good faith and fair dealing inherent in the mortgage contract. The covenant of good faith and fair dealing is implied in every Massachusetts contract. See T.W. Nickerson, Inc. v. Fleet Nat. Bank, 456 Mass. 562, 569-70 (2010). It prohibits any party to the contract from "injur[ing] the rights of another [party] to reap the benefits prescribed by the terms of the contract." Id. at 570 (quoting Anthony's Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471-72 (1991)). However, "[i]t cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" Id. (quoting Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004)). This count amounts to another claim that Citizens did not proceed strictly

according its contractual obligations.   Tasiopoulos could have raised this claim in the summary process action.   See Duggan v. Gonsalves, 65 Mass. App. Ct. 250, 254 & n.6 (2005) (Housing Court's jurisdiction encompasses breaches of the implied duties of good faith and fair dealing).   Therefore, it is now precluded by the final judgment in that action.

## B. Remaining Claims

As explained earlier, the court is not deciding whether Tasiopoulos' REPSA and HAMP claims are precluded by the final judgment in the summary process action.   To the extent these claims are not precluded, they are unmeritorious, and are being dismissed.

Count II alleges several violations of RESPA, including Citizens' failure to give adequate notice of foreclosure, failure to respond to QWRs, refusal of reinstatement, and unlawful acceleration of a mortgage.   The only applicable provision of RESPA is 12 U.S.C. §2605(e), which requires loan servicers to respond to QWRs for "information relating to the servicing of [a] loan."[5] Tasiopoulos asserts that Citizens failed to provide a sufficient

---

[5] 12 U.S.C. §2605(k), which broaden the duties of loan servicers, was not in effect at the time of Citizens' alleged violations. See Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, § 1400(c) (2010); Foregger v. Residential Credit Solutions, Inc., C.A. No. 12-11914-FDS, 2013 WL 6388665, at *5 (D. Mass. Dec. 5, 2013) ("[B]efore the Dodd-Frank amendments to RESPA, a borrower had no right to learn, from the servicer, the identity of the owner of the mortgage note.").

response to his QWRs. He provides no details about the content or
timing of the request or Citizens' allegedly deficient response.
This wholly conclusory allegation is insufficient to state a claim
that Citizens' conduct fell under, let alone violated, RESPA. See
Twombly, 550 U.S. at 561-62. Therefore, Tasiopoulos' RESPA claim
is being dismissed.

In Count III, Tasiopoulos alleges that Citizens violated HAMP
by failing modify his loan and by foreclosing while his QWRs and
HAMP application were pending. Under the HAMP program, loan
servicers enter a Servicer Participation Agreement ("SPA") with
the government. The SPA requires the servicer to offer loan
modifications in certain circumstances. However, the First
Circuit has held that borrowers have no private right to enforce
SPAs. See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491 (1st
Cir. 2013). Any legal entitlement to a loan modification must
come from the mortgage or another enforceable contract between the
borrower and the servicer or lender. Cf. Young v. Wells Fargo
Bank, N.A., 717 F.3d 224, 234 (1st Cir. 2013) (plaintiff was
entitled to modification after accepting binding Trial Period Plan
contract pursuant to HAMP). Tasiopoulos alleges no such contract
here. Accordingly, Tasiopoulos' HAMP claims are being dismissed.

14

IV.   ORDER

In view of the forgoing, it is hereby ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim (Docket No. 13) is ALLOWED and this case is DISMISSED.

UNITED STATES DISTRICT JUDGE